**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SHANTAE ANTHONY,<br><br>                Plaintiff,<br><br>    v.<br><br>CAROLYN W. COLVIN, Commissioner of the Social Security Administration,<br><br>                Defendant. | Case No. EDCV 13-1658 SS<br><br>**MEMORANDUM DECISION AND ORDER** |

**I.**

**INTRODUCTION**

Shantae Anthony ("Plaintiff") seeks review of the final decision of the Commissioner of the Social Security Administration (the "Commissioner" or the "Agency") denying her Disability Insurance Benefits and Supplemental Security Income. The parties consented, pursuant to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United States Magistrate Judge. For the reasons stated below, the decision of the Commissioner is

REVERSED and the action is REMANDED for further review consistent with this decision.

## II.
## PROCEDURAL HISTORY

Plaintiff filed applications for Title II Disability Insurance Benefits ("DIB") and Title XVI Supplemental Security Income ("SSI") on February 25, 2011. (Administrative Record ("AR") 132, 136). In both applications, Plaintiff alleged a disability onset date of October 1, 2004. (Id.). The Agency denied Plaintiff's applications on August 8, 2011, (AR 75), and upon reconsideration on April 2, 2012. (AR 87, 90). On April 27, 2012, Plaintiff requested a hearing before an Administrative Law Judge. (AR 85). Plaintiff appeared and testified at a hearing before ALJ James Nguyen on November 15, 2012. (AR 27-46). On January 4, 2013, the ALJ issued a decision denying Plaintiff DIB and SSI. (AR 7-22). Plaintiff requested review of the ALJ's decision, which the Appeal's Council denied on July 24, 2013. (AR 1-4). Plaintiff filed the instant action on September 25, 2013.

## III.
## PLAINTIFF'S CLAIMS

Plaintiff challenges the ALJ's decision on two grounds. First, Plaintiff argues that the ALJ erred at step three of the five-step disability evaluation process by failing to consider

whether her impairments met or equaled the criteria for an intellectual disability set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1, Listing 12.05. (Memorandum in Support of Plaintiff's Complaint ("MSPC") at 2-7). Second, Plaintiff contends that the ALJ improperly concluded that she could perform jobs that, according to Dictionary of Occupation Titles ("DOT"), exceed her residual function capacity ("RFC"). (Id. at 7-10). For the reasons discussed below, the Court agrees with Plaintiff that the ALJ erred at step three of the five-step evaluation process, and remand is therefore appropriate.

**IV.**

**STANDARD OF REVIEW**

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001). "Substantial evidence is more than a scintilla, but less than a preponderance." Reddick v. Chater, 157 F.3d 715, 720 (1998). It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland, 257 F.3d at 1035 (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th

Cir. 1993)).  If the evidence can reasonably support affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner.  Reddick, 157 F.3d at 720-21.

## V.

## DISCUSSION

**The ALJ Erred At Step Three By Failing To Consider Whether Plaintiff's Impairments Met Or Equaled The Listing For An Intellectual Disability**

**1.  Legal Standard**

"If a claimant meets or equals a listed impairment, [she] will be found disabled at [step three] without further inquiry." Tacket v. Apfel, 180 F.3d 1094, 1099 (9th Cir. 1999); see also Lewis v. Apfel, 236 F.3d 503, 512 (9th Cir. 2001).  To meet a listed impairment, a claimant "must establish that [she] meets each characteristic of a listed impairment relevant to [her] claim."  Tackett, 180 F.3d at 1099; see also Burch v. Barnhart, 400 F.3d 676, 683 (9th Cir. 2005) (claimant bears the burden of proving disability at step three).  "An ALJ must evaluate the relevant evidence before concluding that a claimant's impairments do not" satisfy a listed impairment, and a "boilerplate finding is insufficient[.]"  Lewis, 236 F.3d at 512 (citing Marcia v. Sullivan, 900 F.2d 172, 176 (9th Cir. 1990)).
\\

4

"The structure of [Listing 12.05], the listing for intellectual disability[,] is different from that of the other mental disorder listings." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.00. Pursuant to Listing 12.05, "intellectual disability" refers to "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the development period; i.e., the evidence demonstrates or supports onset of the impairment before age [twenty-two]." Id. at § 12.05; see also Gomez v. Astrue, 695 F. Supp. 2d 1049, 1052-53 (C.D. Cal. 2010). "The required level of severity for this disorder is met when the requirements in [Listing 12.05(A), (B), (C), or (D)] are satisfied." 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.05. Thus, if a claimant's impairment satisfies the diagnostic description of an intellectual disability and any of the criteria set forth in Listing 12.05(A)-(D), the claimant is intellectually disabled. Id. at § 12.00.

Plaintiff argues that the "record demonstrates that [she] [met or equaled] Listing 12.05(C)." (MSPC at 5). To prove disability under Listing 12.05(C), a claimant must have "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]" 20 C.F.R. Part 404, Subpart P, Appendix 1, §§ 12.05(C). However, even if a claimant satisfies the requirements of Listing 12.05(C), she must also show that her intellectual disability initially manifested before age twenty-two. See Markle v. Barnhart, 324 F.3d 182, 187

5

(3d Cir. 2003); Lewis v. Astrue, 2008 WL 191415, at *7-8 (N.D. Cal. Jan. 22, 2008).

**2. Analysis**

Plaintiff argues that the ALJ improperly failed to consider whether her impairments met or equaled Listing 12.05(C). At step three, the ALJ found that the "evidence [did] not support a finding that the claimant [had] the severity of the symptoms required either singly or in combination to meet any medical listing, including those found under 1.00 and 12.00." (AR 13). Specifically, the ALJ found that Plaintiff's impairments did not meet or equal Listing 12.04, which sets forth the requirements for affective disorders. (Id.). The ALJ did not address, however, whether Plaintiff's impairments satisfied the requirements for an intellectual disability under Listing 12.05.

Although the ALJ did not explain why he ignored Listing 12.05 at step three, the ALJ addressed Plaintiff's mental impairments, including her IQ scores, in the part of his decision discussing Plaintiff's residual function capacity. (AR 19). In determining Plaintiff's RFC, the ALJ gave "significant weight" to the findings of Dr. Gamboa, a clinical psychologist, who conducted a complete consultative examination of Plaintiff on July 12, 2011. (Id.). Dr. Gamboa reported, inter alia, that Plaintiff scored a full scale IQ of 62 and her overall cognitive ability "fell within the extremely low range of functioning." (Id.). Despite giving significant weight to Dr. Gamboa's opinion

6

generally, the ALJ gave Plaintiff's 2011 IQ score of 62 "[n]o weight" because this score conflicted with her IQ scores from a 2006 exam administered by Dr. Riahinejad. (Id.). On the test administered by Dr. Riahinejad, Plaintiff achieved a verbal IQ of 78 and a performance IQ of 75, for a full scale IQ of 75. (AR 238). Accordingly, it appears that the ALJ did not address whether Plaintiff's impairments met or equaled Listing 12.05(C) on the ground that she did not achieve a valid verbal, performance, or full scale IQ of 60 through 70.

The Court finds that the ALJ's rejection of Plaintiff's 2011 IQ score and resulting failure to consider Listing 12.05 were improper. Courts in the Ninth Circuit have held that where multiple or conflicting IQ scores are available, the operative score in determining whether a claimant is intellectually disabled is the lowest valid score on record. See Fanning v. Bowen, 827 F.2d 631, 633 (9th Cir. 1987) (IQ requirement satisfied where claimant had qualifying score in 1982 and non-qualifying score in 1983); Ray v. Chater, 934 F. Supp. 347, 349-50 (N.D. Cal. 1996) (IQ requirement satisfied where claimant had non-qualifying score in 1993 and qualifying score in 1995); Hutnick v. Colvin, 2014 WL 880360, at *5 (E.D. Cal. March 5, 2014) ("Courts in the Ninth Circuit have held that where multiple or conflicting IQ scores are available, the operative score for purposes of determining whether a claimant's impairments meet or equal Listing 12.05(C) is the lowest 'valid verbal, performance or full scale IQ' score the claimant has received."). Accordingly, it was error for the ALJ to ignore Plaintiff's 2011

IQ score of 62 in favor of her earlier, higher scores in determining whether Plaintiff was disabled at step three.

Although an ALJ need not accept, in all cases, the validity of an IQ score a claimant offers to prove intellectual disability, Thresher v. Astrue, 283 Fed. Appx. 473, 475 (9th Cir. 2008), "the Ninth Circuit has not yet decided what facts the ALJ may use in determining the validity of a[n] [IQ] test result[.]" Wedge v. Astrue, 624 F. Supp. 2d 1127, 1131 (C.D. Cal. 2008). Courts outside the Ninth Circuit permit an ALJ to consider several factors in assessing the validity of test results, such as evidence of malingering or feigning results, daily activities inconsistent with the alleged impairment, and psychologists' opinions that are supported by objective medical findings. Id. at 1131-32.

Here, the ALJ did not provide sufficiently persuasive reasons for rejecting Plaintiff's 2011 IQ score. See Gomez, 695 F. Supp. 2d at 1057 (at a minimum, an ALJ should not find that evidence renders an IQ invalid without explaining how that evidence impacts the validity of the score). The ALJ gave significant weight to the opinions of State agency mental consultants Dr. Flocks and Dr. Cogbill, which suggested that Plaintiff suffered only mild mental limitations. (AR 20). However, the ALJ failed to explain why the opinions of Plaintiff's non-examining physicians were afforded more weight than the opinion and findings of the consultative examining psychologist, Dr. Gamboa. See Lester v. Chater, 81 F.3d 821,

8

830-31 (9th Cir. 1995) ("[L]ike the opinion of a treating doctor, the opinion of an examining doctor, even if contradicted by another doctor, can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record. The opinion of a nonexamining physician cannot by itself constitute substantial evidence that justifies the rejection of the opinion of either an examining physician <u>or</u> a treating physician."). Moreover, to the extent the ALJ declined to consider Listing 12.05 because the State agency mental consultants did not diagnose Plaintiff with an intellectual disability, this was improper. The absence of a diagnosed intellectual disability does <u>not</u> preclude a finding that a claimant is intellectually disabled. See <u>Lewis</u>, 2008 WL 191415, at *5 (citing <u>Christener v. Astrue</u>, 498 F.3d 790, 793 (8th Cir. 2007)).

In sum, the ALJ improperly failed to consider whether Plaintiff was intellectually disabled pursuant to Listing 12.05(C). Plaintiff satisfied Listing 12.05(C)'s IQ requirement based on her 2011 full scale IQ of 62. Furthermore, the ALJ found that Plaintiff (a) had the "severe impairments" of degenerative disc disease of the lumbar spine, asthma, obesity, and a major depressive disorder, and (b) could perform less than a full range of sedentary work. (AR 12, 14). Accordingly, Plaintiff also satisfied the second prong of Listing 12.05(C), <u>i.e.</u>, she had another impairment imposing an additional and significant work-related limitation of function. See <u>Fanning</u>, 827 F.2d at 633 (an impairment imposes a significant work-related

1  limitation of function when its effect on a claimant's ability to
2  perform basic work activities is "more than slight or minimal");
3  Gomez, 695 F. Supp. 2d at 1062 (claimant met Listing 12.05(C)'s
4  second prong where ALJ found that he had severe physical and
5  mental impairments).  Because Plaintiff appears to meet Listing
6  12.05(C)'s requirements, this matter is remanded for further
7  proceedings consistent with this decision.  On remand, the ALJ
8  must determine whether Plaintiff's intellectual disability
9  initially manifested before age twenty-two.  See 20 C.F.R. Part
10 404, Subpart P, Appendix 1, § 12.05.  If the ALJ concludes that
11 Plaintiff's intellectual disability manifested before age twenty-
12 two, this will be a material fact in determining if she is
13 disabled.[1]  See Tacket, 180 F.3d at 1099.
14 \\
15 \\
16 \\
17 \\
18 \\
19 \\
20 \\
21 \\

---

[1] The requirement that a claimant's intellectual disability initially manifest before age twenty-two is "'intended to limit coverage to an innate condition, rather than a condition resulting from a disease or accident in adulthood.'" Gomez, 695 F. Supp. 2d at 1060 (quoting Novy v. Astrue, 497 F.3d 708, 709 (7th Cir. 2007)). "IQ tests or other contemporary evidence of mental retardation prior to age [twenty-two] is not required to establish onset before that age." Id. It is sufficient that the record contain "some evidence" that permits "an inference that the impairment existed before age [twenty-two] and is not of recent origin due to a traumatic event or some other changed circumstance." Id. (citing Markle, 324 F.3d at 188-89); see also Hutnick, 2014 WL 880360, at *6.

10

# VI.

# CONCLUSION

Consistent with the foregoing, and pursuant to sentence four of 42 U.S.C. § 405(g), IT IS ORDERED that judgment be entered REVERSING the decision of the Commissioner and REMANDING this action for further proceedings consistent with this Memorandum and Order. IT IS FURTHER ORDERED that the Clerk of the Court serve copies of this Order and Judgment on counsel for both parties.

DATED: July 31, 2014

/S/
SUZANNE H. SEGAL
UNITED STATES MAGISTRATE JUDGE

**THIS MEMORANDUM IS NOT INTENDED FOR PUBLICATION NOR IS IT INTENDED TO BE INCLUDED OR SUBMITTED TO ANY ONLY SERVICE SUCH AS WESTLAW OR LEXIS**